## JIM HENRY REYNOLDS V. STATE.

No. 26,747. January 13, 1954.
Rehearing Denied March 31, 1954.

*Marshall T. McCullough, Harold R. Allison,* and *Russell F. Wolters*, of Houston, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was charged by indictment in two counts with the offense of rape upon one Tommie Ann Barrett, the first count alleging the offense to have been committed by force, threats and fraud, and the second count alleging that the said Tommie Ann Barrett was a female under the age of eighteen years, and was ravished by the said Jim Henry Reynolds on the 17th day of July, 1952.

The testimony shows that the complaining witness resided at Garrison, Texas, some distance from the scene of the alleged offense; that she was a high-school student and during the summer months worked as a car hop or waitress at certain night clubs.

On the night in question she was in a car with the appellant and one, Kenneth Horn, both of whom were afterwards under indictment for the alleged rape. They visited certain night clubs and drank some beer. They went from place to place in search of a female companion for one of them. They failed to obtain another girl, and after visiting more night clubs and drinking more beer, the appellant's companion attempted to become familiar with the girl, so she testified, and they finally arrived at a secluded spot off the main highway near a Negro settlement. There the girl leaped out of the car and ran into a nearby woods where she remained hidden from the men for quite a period of time. However, she presently appeared at two Negro homes and asked for aid and assistance and requested that they take her to town or to a telephone, but this they refused to do because of being afraid to take any chances in the trouble between "these white people." She eventually started back to town, and while on the highway the appellant and his companion came up from the rear, grasped her, and by force placed her in the back of the car. After much verbal abuse, the appellant, a man 28 years of age, threw her into a ditch, sat on her stomach, smothered her cries and raped her, after which his companion also had intercourse with her against her consent. This is only a synopsis of her testimony herein.

It is the appellant's contention that as a result of drinking a large quantity of beer the girl became excited and insisted that each of these men have intercourse with her, and that each act of intercourse was had with her consent. However, the jury accepted the girl's version of the offense and awarded appellant a penalty of five years in the state penitentiary under their verdict of guilt.

This case comes to us in the argument had on its submission herein on two major points, one of which occurred in the following manner: Mrs. Fred Barrett, the mother of the prosecutrix, was placed upon the stand by the state and was interrogated relative to the age of her daughter. She testified that she was married in 1915; that Tommie Ann Barrett was her daughter and was 17 years of age, her birthday being on April 22nd, and that the girl would be 18 years old before long. Upon cross-examination, however, as she was being interrogated as to the ages of her six children, when she came to the name of Tommie Ann, she testified that Tommie Ann was 17 years of age at the time of the trial, she having been born on April 22, 1934.

After Mrs. Barrett was released from the stand, Tommie

Ann Barrett was then placed thereon and interrogated relative to her age. She said she was 17 years of age on April 22nd previous to the time she testified, and that she was born in 1935. She was then interrogated further thereon and stated that her mother was mistaken in saying that she (Tommie Ann) was born in 1934. It is evident from her cross-examination that after the mother had been excused from the stand, the district attorney had a talk with the mother out in the hallway where the witnesses were awaiting their turn, all being under the rule; and the mother said that she had become nervous and excited and had gotten wrong the date relative to the girl's age; that the district attorney told her that she had become "bumfuzzled" about the matter of the girl's age, she still contending, however, that the girl was 17 years of age. Appellant then went into this matter relative to the girl's age and asked for a mistrial because of the conduct of the district attorney in talking to the witnesses in the presence of other witnesses who were under the rule. The district attorney then abandoned the second count of the indictment which related to the rape of a girl under the age of consent and stated that he relied entirely upon that part of the indictment which charged rape by force, threats and fraud. Thereupon, the appellant asked for a mistrial on the grounds as above stated, which request was denied by the court. We think the court was correct in refusing this request for a mistrial, and the matter became immaterial in so far as the girl's age was concerned, because of the fact that appellant was no longer charged with the rape of a girl under the age of consent, and such count was not submitted to the jury.

Appellant further complains that he was deprived of a material right of cross-examining the mother of the girl relative to the question of her age, he thinking that such examination would redound to his benefit. We think that under the circumstances, the court very properly disposed of this matter by his instructions and his acceptance of the motion of abandonment of the second count of the indictment relative to the rape of a female under the age of consent. A rigid cross-examination relative to the girl's age would have no bearing on the question of a rape by force.

We are cited to many cases by the appellant wherein it is shown that after the invocation of the rule, the same was violated by a witness who disobeyed the order of the court. In the present instance, the testimony shows that after the mother of the prosecutrix had been on the stand and retired therefrom,

the district attorney consulted her, as he had a right to do under the court's ruling. The testimony also shows that there was but a casual conversation between the district attorney and the mother of the prosecutrix relative to the girl's age. The conversation was not held in the immediate presence of the girl but she overheard them talking. There was no attempt to have the mother change her testimony, and naught was further said relative thereto, either to the mother or by the prosecutrix. The prosecutrix went on the stand and testified as to her age and the date of her birth, which would make her 17 years of age. The district attorney then abandoned the count of the indictment which charged rape of a female under the age of consent, and the fact of the girl's age ceased to be a material issue at such time. Therefore, we say that this matter relative to the girl's age passed out of the present case.

The only other question raised by the appellant in his brief and in his argument is the contention that the facts themselves do not show a rape by force.

The statement of facts contains some 662 pages, and after a careful reading thereof, we are impressed with the following relative to an outcry and consent: Immediately upon being released by her two assailants, the prosecutrix contacted M. C. Roebuck, who testified that he was night chief of police in the city of Nacogdoches at the time; that he saw the complaining witness herein on the early morning of July 18, 1952, at the police station; that it was about 1:00 or 1:30 o'clock in the morning; that she was in company with a young lady friend and two boys. She made complaint at that time, and as to her physical appearance, she had several bruises and abrasions on her. "She had one under one of her eyes and a small skinned place and several bruises and abrasions around on her arms." She remained at the station for about 30 or 40 minutes. He saw her dress at that time and it was torn. She was then taken to Dr. James G. Taylor, the County Health Officer, by Mr. Roebuck. Later on, about daylight, she came back to the police station in company with her father and mother. At the time the girl first appeared in his presence, she told her story and said that she had been assaulted, and that she thought the offense occurred in Trinity County.

Dr. Taylor, a practicing physician in Nacogdoches, saw the girl on the 18th day of July at the city hospital. This was about one o'clock in the morning, and she was then accompanied

by the night police chief and a nurse. The doctor examined the body of Tommie Ann Barret and testified as follows:

"I examined her vagina and perceived that it was swollen at the entrance and there was blood oozing from the vagina, and then I took a swab and collected some of the substance from the interior of the vagina and had it examined in a laboratory under the microscope and went back and examined it myself and perceived that were sperm present, as well as red blood cells."

The doctor also testified that there were male sperms that he found in her body, and that there was evidence of the fact that she had had a recent act of intercourse. He also testified that blood was oozing from the entrance area and not from the deep portion of the vagina, that is, about half an inch inside thereof. It was his opinion that the blood was oozing from the area of the hymen made by some object entering her vagina. There was blood on her pants. Her vagina was swollen and evidenced that she had been recently penetrated by something. The doctor treated her for bruises around the entrance of her vagina.

It is also worthy of note relative to the sufficiency of the evidence that the appellant himself testified that he was 28 years of age and worked for the Airway Branches, Incorporated, selling vacuum cleaners; that he went out on the night in question with the prosecutrix and Kenneth Horn and drank some beer; that eventually the young lady solicited him to have intercourse with her; that she acted like she was hysterical and insisted that the appellant and his companion have intercourse with her; that for some unknown reason she leaped out of the car at a certain colored neighborhood called Nigton and fled into the woods where she remained for quite awhile; that he and his companion began to hunt for her and were driving up and down the highway looking for her until she finally came back out thereon. They then upbraided her for running off and hiding. He said he saw where her dress was torn and said that while running through the woods and hiding therein she received the bruises and wounds on her body. He testified that she was asking his companion to have intercourse with her, and that at her request he eventually yielded and had intercourse with her himself. When asked about her condition, he said that she acted hysterical and acted like she was crazy; and she eventually demanded a large sum of money from him.

On cross-examination the appellant was asked by the state the following question:

"Q. Now, Mr. Reynolds, is what you mean to tell this jury is that Tommie Ann Barret raped you? A. Exactly right, sir."

The testimony shows that the mother of the prosecutrix was contacted by appellant's attorney, who eventually came out to her house and paid the mother $210.00 and promised certain other things to the prosecutrix, who signed the following statement:

"Garrison, Texas,
August 27, 1952.

I hope I will not have to appear and testify against Jim Reynolds and Kenneth Horn. As far as I am concerned I hope that the rape case they are charged with in Groveton can be forgotten and the matter considered closed and dropped. I do not want to appear and testify anywhere for personal reasons. I hope this case will be dismissed and nothing further said about it.

"(s) Tommie Ann Barrett

"Approved:
"(s)  Velma  Barrett
"(s)  Fred  Barrett."

This matter was introduced by the appellant's attorneys, for what purpose it would be difficult to understand. Surely, they were not paying the prosecuting witness $210.00 to drop the prosecution for a criminal offense, but merely, according to their contention, to pay for the torn dress and clothing that she had on at the time of the claimed assault; and such payment may have been of some assistance to the appellant in obtaining a low verdict from the jury.

It is further evidenced herein that there was no effort upon the part of this young lady to assist the appellant and his attorneys in any way, either in her testimony to the state, or in the rigorous cross-examination by the appellant's counsel. This young lady seemed amply able to take care of herself under a gruelling cross-examination through the many pages of this record.

In this voluminous record, we find 58 Informal Bills of Exception which necessarily had to be read in going through the statement of facts. None of these bills are briefed, and none of them evidence to us any error of importance.

This case has been a difficult one to try, and the careful trial judge seems to have discharged his duty by giving appellant all the benefits that he is entitled to under the law and the facts therein.

We think the case has been properly tried and no error has been perceived therein.

The judgment will therefore be affirmed.

ON MOTION FOR REHEARING.

BELCHER, Judge.

Appellant, in his motion for rehearing, again contends that the court erred in overruling his objections to the prosecutrix further testifying, and in refusing to allow further cross-examination of her as to her age, and in refusing to grant a mistrial after it was developed, during the prosecutrix' testimony, that she overheard the district attorney and her mother, who had just testified, talking about the mother's testimony as to her age, because both witnesses were under the rule. Immediately after appellant's objections, the state abandoned the count in the indictment alleging the prosecutrix to be under eighteen years of age, thereby electing to rely upon the count charging rape by force. This action removed any issue as to the age of the prosecutrix, and the court's refusal to permit other and further testimony as to the age of the prosecutrix could not be calculated to injure the rights of appellant.

Appellant contends that the evidence fails to show that the offense charged was committed in Trinity County.

The prosecutrix described the place of the attack as being some two hundred yards from the Apple Springs-Groveton highway on a side road leading toward Ratcliff. The witness M. L. Richards testified that such location was in Trinity County, it being some seven miles along this side road from its intersection with said highway to the county line.

We have carefully examined the record in light of appellant's contentions and his brief in support thereof, and we remain convinced that no reversible error is shown.

Appellant's motion for rehearing is overruled.

Opinion approved by the Court.